IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____
SECURITIES AND EXCHANGE COMMISSION, §
§
    Plaintiff, §
§
vs. §
§ Civil Action No.: 4:17-CV-321-Y
4D CIRCLE LLC a/k/a ENOETICS, §
MANTFORD C. HAWKINS, and §
DAVID E. BELL, §
§
    Defendants. §
_____ §

## RECEIVER'S SECOND QUARTERLY STATUS REPORT

Pursuant to paragraphs 52 and 53 of the Court's April 13, 2017 Agreed Order Appointing Receiver [ECF No. 9], the Receiver, Lars L. Berg ("Receiver"), respectfully submits this second status report providing information about, and an accounting of, the Receivership Estate. This report reflects the existence, value, and location of Receivership property and the liabilities of the Receivership Estate for the quarter ending September 30, 2017.[1] This information is provided in subsections bearing titles from subparagraphs A though H of paragraph 53 of the Court's order. In addition to this report, the Receiver is filing an Appendix to the Receiver's Second Quarterly Status Report ("Appendix"), and it contains the schedule required by subparagraph C of paragraph 53 of the Order. For completeness and ease of reference, this second report contains all of the information from Receiver's First Quarterly Status Report [ECF No. 14] ("First Report") and provides an update on all aspects of the Receivership.

---

[1] All of the information in this report is based on the Receiver's current understanding of the available information reviewed thus far, and changes may occur as his review continues and his investigations unfold.

A.  **A Summary of the Operations of the Receiver.**

*1. Identification And Recovery Of Receivership Property*

The Receiver's ongoing investigation of the nature and extent of the assets belonging to the Receivership Estate revealed that the primary assets (other than cash) of the Receivership Estate consist of real estate, specifically a commercial building and two apartment complexes. Since the date of the Receiver's First Quarterly Status Report, the Receiver has not discovered any additional assets.

*2. Real Estate.*

The Receiver initially believe that defendant 4D Circle LLC ("4DC") and its subsidiaries had an interest in 12 separate properties. The spreadsheet attached as Exhibit 6 to the accompanying Appendix lists and briefly describes all 12 properties. The Receiver continues to investigate the circumstances surrounding the property known as Westfork (number 5 on the list), but the current available information suggests that 4DC did not have an ownership interest in this property, instead having only a management contract related to Westfork. The Receiver intends to continue to investigate this issue.

Of the 11 other properties, only three remained in 4DC's control at the time the Court appointed the Receiver: (1) Liberty Bank Building; (2) Stratton Apartments; and, (3) Lancaster Apartments. Of the eight other properties, two of them were sold in foreclosure before the Receiver's appointment. Four of the properties were sold by investors who, allegedly under the terms of the limited-liability company agreements between 4DC-related entities and the investors, had assumed control and ownership over the properties. The remaining two properties are currently being operated by investors who similarly assumed control and ownership over the properties.

As for the four properties that were sold, one such sale (E-Normont) occurred, with all the proceeds being distributed, before the Court appointed the Receiver. The Receiver intends to investigate a claw-back claim related to that property. The Matthews' Group was involved in the sale of the other three properties (Chiquita, Las Brisas, and Tejas). The Receiver understands from information provided by the attorney for the Matthews Group that all the proceeds from the sale of the Tejas building were used to pay the mortgage and back taxes, with no surplus paid to any investor. Pursuant to negotiations between the Receiver and the attorney for the Matthews Group, the proceeds of the sales of Chiquita and Las Brisas were deposited directly into the attorney's IOLTA account for the transfer to the Receivership account, with all parties reserving all rights.

As for the properties currently under the control of the investors, the Receiver has been in contact with the lawyers representing the Matthews Group and the lawyer representing Jarvis to (i) ensure that those assets are protected and (ii) preserve the claims of the Receivership Estate related to those assets.[2] Since the First Report, the Receiver has been in regular contact with the Matthews Group and understands that the property it took control of is operating well. Jarvis has not adequately communicated with the Receiver, and the Receiver intends to pursue the issue through more formal channels, including subpoenas and, perhaps, other formal discovery tools.

3. *Cash and Other Assets.*

The Receiver previously identified all the money held by 4DC in various bank accounts and transferred all that money into an account opened in accord with paragraphs 34 and 35 of the Agreed Order Appointing Receiver. The Receiver also opened three operating accounts – one for each piece of property. Exhibit 2 to the Appendix reflects the cash on hand in each of the

---

[2] Andy Ryan represents the Matthews Group and Michael Boyd represents Jarvis.

four accounts. Because 4DC did not maintain an office, there were virtually no assets that would normally be associated with operating a business (e.g., computers, office furniture, and office equipment.) Nevertheless, the Receiver took possession of the only laptop known to be owned by 4DC. Finally, the Receiver is investigating potential claw-back claims. To do so, the Receiver contacted William D. Brown, a forensic accountant, about obtaining his services in tracing all the money flowing through 4DC and related entities. Mr. Brown agreed to assist at a discounted rate.

In the First Report, the Receiver expressed his intent to seek Court approval to hire Mr. Brown. Mr. Brown's anticipated tracing, coupled with other investigations, was intended to identify potential claw-back claims. Shortly after the First Report, the Receiver came to realize that nearly all the Receivership's available cash would be required to operate the three properties directly under the Receiver's control. Because of that, the Receiver did not believe that any money should be spent at that time to retain Mr. Brown. Moreover, the Receiver believed that the Receivership would be so strapped for cash that he also chose not to submit to the Court his firm's bills for all the Receiver's work. Again, all the Receivership's cash was used to maintain the assets, and there is currently insufficient cash on hand to pay the Receiver's bills, much less hire Mr. Brown. The Receiver hopes that the sale of one or more of the properties will provide enough cash to cover all the expenses of the Receivership and hire Mr. Brown to conduct a forensic accounting.

    *4. Operations And Disposition Of Receivership Property*

As alleged by the SEC, the Receiver discovered, upon assuming control over the properties, that the properties had not been adequately maintained and a large number of property-related bills had not been paid for several months. The Receiver initially spent a great

RECEIVER'S SECOND QUARTERLY STATUS REPORT   PAGE 4
2549644_1

deal of time and money paying past-due bills and addressing emergencies (e.g., inoperable air conditioning in the office building and a collapsed sewer line at one of the apartment complexes). He also hired professional property managers to assist in day-to-day operations and leasing. Since the First Report, the Receiver and the property managers have continued both to address various delayed-maintenance issues and to work toward stabilizing the properties and ensuring that they are fully leased. Ensuring that the properties are fully leased included not only securing new tenants, but also negotiating new leases with existing tenants whose leases expired, or were set to expert in the near future. Although the Receiver, through the property managers, undertook a marketing campaign to increase the occupancy at the properties, the occupancy is still lower than hoped, especially at the Lancaster Apartments. The Receiver intends to continue to work with the property managers to increase occupancy. The Receiver continues to understand that the properties currently being operated by investors are similarly being stabilized and leased, recognizing that he has received very limited information from Jarvis.

      The Receiver believes that the properties have stabilized and that it is time to begin exploring options to sell the properties, and he intends to begin in the near future the process of selling all three properties. The Receiver intends to consider all options for sales of the properties and/or arrangements proposed by investors for the fair and equitable disposition of the properties. The initial discussions with various groups of investors for such alternative disposition that the Receiver reported in the First Report did not come to fruition. The Receiver believes no such opportunities exist, but will entertain further opportunities offered by the investors.

**B.    The Amount of Cash on Hand, the Amount and Nature of Accrued Administrative Expenses, and the Amount of Unencumbered Funds in the Estate.**

As reflected in the Cash Summary for 4D Circle for the Quarter ended 9/30/17, which is Exhibit 2 to the Appendix, the Receivership Estate had $88,001.01 cash on hand as of 9/30/17, but a substantial portion of that cash was required to make the mortgage payments due the first few days of October. None of this cash is encumbered. The accrued administrative expenses are in the form of attorneys' fees and related expenses incurred at Kelly, Hart & Hallman, LLP and total $166,044.75 ($165,624.50 in fees and $420.25 in expenses).

**C.    A Schedule of all the Receiver's Receipts and Disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership.**

The Appendix filed with this Report contains the information required by paragraph 53.C of the Court's Agreed Order Appointing Receiver including the following exhibits:

1. Consolidated Financial Statement For 4D Circle For the Quarter Ended 9/30/17.
2. Cash Summary For 4D Circle For the Quarter Ended 9/30/17.
3. Income Statement For Operations of Liberty Bank Building For the Quarter Ended 9/30/17.
4. Income Statement For Operations of Lancaster Apartments For the Quarter Ended 9/30/17.
5. Income Statement For Operations of Stratton Apartments For the Quarter Ended 9/30/17.

**D.    A Description of All Known Receivership Property, Including Approximate or Actual Valuations, Anticipated or Proposed Dispositions, and Reasons for Retaining Assets Where no Disposition is Intended.**

The Receivership Property (other than the previously described cash on hand and the laptop computer) consists exclusively of the following three pieces of real property:

1.      The Liberty Bank Building is a six-story, 100,000-square foot office building located at 7001 Boulevard 26, North Richland Hills, Texas.  For 2017, the Tarrant Appraisal District ("TAD") values this property at $6,087,681.  The Receiver hired 312 Management, L.P. to manage this property.  Again, the Receiver intends to begin in the near future the process to sell this asset.  At the appropriate stage and pursuant to paragraphs 37 and 38 of the Agreed Order Appointing Receiver, the Receiver will seek further order of the Court related to such sale.

2.      The property known as the Lancaster Apartments is an apartment complex with 85 apartments located at 5200 E. Lancaster Ave., Fort Worth, Texas.  For 2017, TAD values this property at $2,390,662.  The Receiver Hired Partnership Realty Service, Inc. to manage this property.  Again, the Receiver intends to begin in the near future the process to sell this asset.  At the appropriate stage and pursuant to paragraphs 37 and 38 of the Agreed Order Appointing Receiver, the Receiver will seek further order of the Court related to such sale.

3.      The property known as the Stratton Apartments is an apartment complex with 52 apartments located at 5009 Lancaster Ave., Fort Worth, Texas.  For 2017, TAD values this property at $1,346,720.  The Receiver hired Partnership Realty Services, Inc. to manage this property.  Again, the Receiver intends to begin in the near future the process to sell this asset.  At the appropriate stage and pursuant to paragraphs 37 and 38 of the Agreed Order Appointing Receiver, the Receiver will seek further order of the Court related to such sale.

**E.    A Description of Liquidated and Unliquidated Claims Held by the Receivership Estate, Including the Need for Forensic and/or Investigatory Resources; Approximate Valuations of Claims; and Anticipated or Proposed Methods of Enforcing Such Claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments).**

When the Receiver filed his First Report, he did not know of any liquidated claims belonging to the Receivership Estate, and that is still true.  It also still holds true that there are several potential unliquidated claims related to the individuals and entities responsible for taking

over the properties previously under the umbrella of 4DC. Each of those properties is listed in Exhibit 6 to the Appendix. The Receiver continues his discussions with the attorneys representing those individuals and entities about how best to proceed, albeit limited discussions with Jarvis. The Receiver continues to investigate all aspects of these potential claims, and he has not yet determined the potential value of such claims or the best method for pursuing them. In conducting further investigations into these and other potential claims, the Receiver would still like to retain Bill Brown (the previously described forensic accountant) to assist him in identifying and evaluating all such claims. These investigations will likely also include identifying those who received money from 4DC or one of its related entities and determining whether or not such funds may be subject to a claw-back claim.

**F.      A List of All Known Creditors With Their Addresses and the Amounts of Their Claims;**

Exhibit 7 to the Appendix contains a list of known creditors, with the address for each, the amount claimed, and a brief description of the claim. This list is a work in progress and is subject to change because additional individuals and entities continue to come forward with claims. The Receiver added several creditors to the list since the First Report.

**G.      The Status of Creditor-Claims Proceedings, After Such Proceedings Have Been Commenced.**

Creditor-claims proceedings have not begun.

**H.      The Receiver's Recommendations for a Continuation or Discontinuation of the Receivership and the Reasons for the Recommendations.**

Because the Receivership is still in the process of identifying and gathering assets, and potential assets, the Receiver respectfully submits that the Receivership continue. The Receiver cannot currently predict how long it will take to marshal all assets, sell the properties, and create a distribution plan.

**CONCLUSION**

In preparing this report, the Receiver sought to provide enough information to keep the Court reasonably informed, but not so much information as to burden the Court with unnecessary detail. If the Court would like any additional detail as to any matter, the Receiver will gladly provide it.

        Respectfully submitted,

        */s/ Lars L. Berg*
        Lars L. Berg
        State Bar No. 00787072
        lars.berg@kellyhart.com
        Whitney D. Beckworth
        State Bar No. 24087400
        whitney.beckworth@kellyhart.com
        KELLY HART & HALLMAN LLP
        201 Main Street, Suite 2500
        Fort Worth, Texas 76102
        Telephone: (817) 332-2500
        Facsimile: (817) 878-9280

        **COURT-APPOINTMENT**
        **RECEIVER/ATTORNEYS**
        **FOR 4D CIRCLE, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 30, 2017, a true and correct copy of the foregoing was served via CM/ECF to all parties of record.

        */s/ Lars L. Berg*
        Lars L. Berg